UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
NANCY E. PROCTOR,                  )
                                   )
            Plaintiff,             )
                                   )
        v.                         )    Civil Action No. 07-01723 PLF
                                   )
MARY E. PETERS,                    )
Secretary Of The Department        )
Transportation,                    )
                                   )
            Defendant.             )
                                   )
_____    )
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
LINDA A. OLIVO,                    )
                                   )
            Plaintiff,             )
                                   )
        v.                         )    Civil Action No. 07-01725 PLF
                                   )
MARY E. PETERS,                    )
Secretary Of The Department        )
Transportation,                    )
                                   )
            Defendant.             )
                                   )
_____    )
```

<u>REVISED PARTIES' REPORT TO THE COURT AND DISCOVERY PLAN</u>

Pursuant to Fed. R. Civ. P. 26(f),LCvR 16.3, and this
Court's recent order in this case, the parties submit the
following report and discovery plan.

<u>Statement Of The Case</u>

This is an action under the Rehabilitation Act and the
Administrative Procedure Act.  The plaintiffs, employees of the
FAA, allege that they suffer from illnesses that qualify them as

disabled persons under the Rehabilitation Act.  Since 2000, they
have participated in the FAA's voluntary leave transfer program
("VLTP"), which permits persons who, themselves or in their
family, have serious medical problems to accept donated leave
from other government employees, leave that can be used after the
employee has exhausted her own sick and annual leave, thus
allowing the employee to continue to receive a salary for the
time period covered by the donated leave.

In 2005, the FAA switched to a new payroll system.  Plain-
tiffs contend that under the new system, implemented in October
2005, the defendant seized their current amount of accrued annual
and sick leave and placed 40 hours of sick and 40 hours of annual
leave in a separate set aside account that could not be used
until the employees left the VLTP.  At the same time, plaintiff's
contend that the agency seized the remainder of their accrued
annual leave and sick leave and moved it into a donated category,
instructing plan participants that they no longer were permitted
to use leave for anything other than medical purposes.

Plaintiffs also contend that following October 2005 plain-
tiffs' accrued leave began to be prorated based on the amount of
donated leave they had used each pay period.  Use of donated
leave began to be treated like "time not worked," which
plaintiffs contend is contrary to the VLTP policy and past
practices.

Plaintiffs further contend that the newly implemented system destroyed the original intent of the program and that the inability to take and accrue annual leave is discriminatory because the disabled individuals are being denied basic benefits and are being treated differently from all other employees without disabilities, who do not need to participate in the VLTP program. Prior to October 2005, plaintiffs contend that participants used accrued sick and donated leave for medical purposes; accrued annual leave was left for personal use.

Defendant's response to these contentions is that the change of payroll systems, which was decided upon in 2003 as part of the "e-government" efficiency program, had no affect on the VLTP and on plaintiffs' use of their own or donated leave. It is defendant's position that the only change made by the new system is that the leave categories and amounts therein became visible to the plaintiffs on the payroll forms they receive. It is also defendant's position that the old payroll system used by the FAA did not have the capacity to reflect all of the VLTP categories on the forms given to the employees. Due to this deficiency, defendant contends, the FAA had to maintain, prior to the transfer to the new payroll system, spreadsheets that contained the information now reflected in the forms provided by the new payroll system. It is, therefore, defendant's contention that the change in payroll systems did not affect any change in the

3

way in which the VLTP should have been handled; hence, there could not have been discrimination or retaliation covered by the Rehabilitation Act.

Defendant notes that not all elements of the FAA were adhering to the agency's VLTP rules prior to the switch in payroll systems. When Deborah H. McKissick, National Lead for the Voluntary Leave Transfer Program for the FAA, was hired in June 2004, she was tasked with responsibility for bringing the practices used by FAA's managers and VLTP participants in line with the agency's VLTP rules. Her actions in this regard, rather than the switch to a new payroll system, may be source of plaintiffs' unhappiness with what they viewed as "changes" to the VLTP program.

Defendant also asserts that plaintiff Proctor's claims are barred because she did not timely exhaust her administrative remedies by contacting an equal employment opportunity counselor within forty-five days of the happening of the events that plaintiff Proctor alleges in this case constituted discrimination and retaliation. Plaintiff Protor contends that the evidence will show that she did, indeed, contact an EEO counselor within 45 days. Defendant also denies that there was any agency action that violated the Administrative Procedure Act.

<u>Local Civil Rule 16 Report</u>

1.  <u>Likelihood Of Resolution By Dispositive Motion</u>.  A
motion to dismiss was not filed by defendant.  Defendant believes
that this case can be resolved by summary judgment; plaintiffs do
not, at this time, know whether the case can be disposed of by
cross-motions for summary judgment.

2.  <u>Amendment Of Pleadings/Addition of Parties</u>.  At this
time, it is unclear whether the pleadings may be amended.  There
will not be, however, the addition of any parties.  It is unclear
at this time whether the factual or legal issues can be agreed
upon or narrowed.

3.  <u>Assignment To Magistrate Judge</u>.  The parties do not
request that the case be assigned to a magistrate judge for all
purposes.

4.  <u>Possibility Of Settlement</u>.  It is unclear at this time
whether the case can be settled.

5.  <u>Alternative Dispute Resolution</u>.  The parties have dis-
cussed the possibility of alternative dispute resolution, and
defendant believes that the question of whether the case should
be referred to mediation should be addressed after the close of
discovery.

6.  <u>Dispositive Motions</u>.  Defendant proposes to file a
summary judgment motion after the close of discovery; it is
unclear at this time whether plaintiffs will do so.  The parties

agree that such motions, if any, should be filed thirty days after the close of discovery.

7.  Initial Disclosures.  The parties waive initial disclosures.

8.  Discovery.  The parties agree that the discovery period should be 120 days, commencing on the date of the filing of this report (February 25, 2008) and ending on June 25, 2008. Defendant notes that discovery is generally not permitted with regard to a claim under the Administrative Procedure Act, where the administrative record is the controlling document.

9.  Exchange Of Expert Witness Reports.  There is no need for changes in the procedures relating to expert witness reports and information.  The parties believe that it would be premature at this time to make decisions relating to expert witness depositions.

10. Class Actions.  Not applicable.

11. Bifurcation.  Trial and discovery do not need to be bifurcated.

12. Date For Pretrial Conference.  Assuming that the case is not resolved by summary judgment, the parties propose that the pretrial conference be held forty-five days after the close of discovery or after the resolution of the summary judgment motions, if any, filed after the close of discovery, whichever is latest.

13.  <u>Trial Date</u>.  The parties believe that the date for the
trial should be set at the pretrial conference.

<u>Discovery Of Electronically-Stored Data</u>

The following information is provided by defendant as to
electronically-stored information in defendant's possession that
may relate to Plaintiffs' utilization of the Voluntary Leave
Transfer Program (VLTP)(to the extent that plaintiffs are aware
of agency records maintained in computerized form, they are
maintained on records described hereafter):

Within FAA, each Staff Office (SO) and Line of Business
(LOB) in each different geographical location generally operates
its own information technology systems with its own information
technology staff of contractors.  The only system that is
centrally controlled by FAA is IBM's Lotus Notes (NexGen).  The
electronic Official Personnel Folders(e-OPFs)and the Federal
Personnel and Payroll Systems (FPPS) are centrally controlled by
different units in the Department of Interior.

<u>FPPS</u>.

The Agency's electronic payroll records are maintained in
the FPPS which is maintained by the Department of Interior (DOI),
National Business Center (NBC).  FPPS contains complete
information for all FAA employees from October 16, 2005 forward.
It also contains legacy payroll data in DATAMART.  In DATAMART,
complete payroll records are kept for a three year period and

7

then the information is available in quarterly snapshots for a period of 10 years.  The FPPS system, including the DATAMART files, is backed up every night.  The nightly back-up tapes are kept for a period of 30 days.  In addition, the personnel/payroll records are backed up on a biweekly basis, which coincides with the end of each pay period.  One copy of this accumulator backup tape is stored on site and one copy is stored off site. These accumulator tapes are for disaster recovery and are kept for a period of 45 days.  Notice of the litigation and requests to hold the complete personnel and payroll records of Plaintiffs has been sent to NBC.  The following individuals have been advised of the above captioned litigation and the need to preserve records: Deborah H. McKissick, National Lead for the Voluntary Leave Transfer Program for the FAA, Madeline Strano, the VLTP Coordinator handling Plaintiffs' VLTP account, Karen Shupe, FAA Castle (Consolidated Automation Solution for Time and Labor Entry) Program Manager, Cynthia Vaughn, OST Associate Director, HR Systems Division, and Linda Riehl of the NBC.

Consolidated Automation Solution for Time and Labor Entry (CASTLE)

_____Before the agency converted to FPPS in October 2005 for personnel/payroll processing, all time collection and labor distribution processing was done through CASTLE. CASTLE is one of two systems that currently has an interface with FPPS and is used

8

in conjunction with FPPS.   It is backed up on a nightly basis
and a weekly backup is stored offsite.   The weekly backup tapes
are maintained for three months.   These tapes are for disaster
recovery, so they are not routinely available to customers.
However, members of the Payroll Liaison Staffs can print off time
cards.   In addition, to the individuals previously identified,
the following individuals have been advised of the above-
captioned litigation and the need to preserve records: Karen
Shupe, FAA Castle (Consolidated Automation Solution for Time and
Labor Entry) Program Manager; Monica K. Orr, Administrative
Systems Branch; and Richard Toye, DOT.

CRUSUPPORT

        Since as early as November 2002,  the FAA has used
CruSupport, a module of Cru-X, for the purpose of recording and
tracking Air Traffic Organization (ATO) employees' paid hours and
to generate labor distribution reports (LDR).  CruSupport is the
ATO's LDR and timesheet front-end entry system for CASTLE.
Facility Cru-X databases are backed up through the use of an
hourly replication process to the Operational Data Store (ODS)
and a clone database simultaneously.  The ODS data is exported to
tape drives located at the William J. Hughes Technical Center.
Tape drive backups are handled incrementally as follows:
(1)nightly changes to the data are retained for 30 days; (2)
weekly a full backup is performed and retained for 6 weeks; and

(3) monthly a full backup is performed and retained for 13 months.  The monthly backup tapes are sent off site for storage. These tapes are for disaster recovery and are not routinely available to customers.  Instead, facility timekeepers have the ability to view/print timesheets.  In addition to the individuals previously identified, the following individuals have been advised of the above-captioned litigation and the need to preserve records:  Mike Masson, Section Manager, Tech Services Group/AJA-173 and Bob Tobin, Group Manager, Technical Services Group/AJA-17.

e-OPF

The Office of Personnel Management owns the e-OPF system used by FAA that is operated on DOI servers in Denver, Colorado.  Once a personnel action is processed in FPPS, a copy of that action is pulled into the e-OPF through an interface with FPPS and placed within the employee's folder.  There are nightly incremental back-ups as well as weekly full back-ups performed on the system. The back-ups are saved off site.  The purpose of the back-ups is for disaster recovery.   In the near future, each employee will have access to his/her e-OPF, but presently, only Human Resource Personnel Specialists who need access to the folders in order to perform their daily functions can access the files.  In addition to the individuals previously identified, the following indivi- duals have been advised of the above captioned litigation and the

need to preserve records:  Latisha A. Mason, Supervisory

Management and Program Analyst, Information Systems Division

(AHP-100), Office of Human Resource Management and Eric Chatmon,

Chief Information Officer, Information Systems Division (AHP-

100), Office of Human Resource Management.

E-Mail.

     FAA utilizes IBM's Lotus Notes (NexGen) for electronic mail.

Employees are limited to 200 megabytes of disk space on the

servers.  As they near the limit, they must actively manage their

individual email messages in order to reduce the size of their e-

mail file.  Active management requires that individuals routinely

archive and delete e-mail files in order to stay within the space

limit.  NexGen has mail servers in 12 sites.  There are mail

servers in Headquarters, the nine regional offices, the Mike

Monroney Aeronautical Center (MMAC), and the Technical Center.

Back-ups are performed on these servers per a Standard Operating

Procedure (SOP).  Regardless of what region or what Line of

Business (LOB) the individual works in or for, there is no

difference in how individual e-mail files are backed-up.  E-mail

messages that an individual has archived will not be included in

the back-up tapes for the e-mail system, because those e-mail

messages no longer reside in the active mail file.  Instead,

archived messages are transferred to a local archive database

that usually resides on the employee's computer.  To gain access

11

to an employee's archive, the local help desk responsible for
that specific personal computer must be contacted and asked to
copy the appropriate archive file.  The help desk would then
provide the copy to the NexGen Program Office where security
walls will be removed, the text of the document searched for
specific terms, and the e-mail archive file copied so that it can
be read by others in addition to the user and the system
administrator.  If an individual's archive file is saved on the C
drive instead of a network server, then the help desk will not be
able to obtain the material remotely but must physically sit in
front of the relevant computer in order to access the hard drive.
The Lotus mail servers are backed-up every night, except Sunday.
The back-ups are performed on a system-wide basis.  All e-mail
messages that a user has in her/his mail file at the close of
each business day are captured in that evening's back-up.  The
back-ups that are performed on Monday through Thursday evenings
are referred to as the daily back-ups.  The back-ups performed on
Friday and Saturday evenings are referred to as the weekly back-
ups.  Daily back-up tapes are retained for 20 days.  Weekly back-
up tapes are retained for 30 days.  After 20 days, the daily tape
is reused and over-written with a new day's back-up.  After 30
days, the weekly tape is reused and over-written with a new
week's back-up.  The retention period for the FAA's system is the
same as the retention period for the Department of Transporta-

12

tion's system.

In addition to the individuals previously identified, the following individual has been advised of the above-captioned litigation and the need to preserve records: Russell Hayslett, FAA Messenger Manager, Information Technology Office, Acquisition and Business Services, ATO.

Word Processing and Other Microsoft Office documents

Every employee in the Human Resource Management Office is allotted 2 gigabytes of space on the H-network drive, which is geared to the individual, and the S-network drive, which is for more collaborative efforts.  The network drives are backed up on a daily and weekly basis.  The weekly back up tapes are kept for one month before being overwritten.  However, if an employee elects to save a work or other Microsoft office documents on his/her c-drive, it will not be part of the system wide back-up. The individuals previously identified have been advised of the above-captioned litigation and the need to preserve records.

Respectfully submitted,

JEFFREY A. TAYLOR, DC Bar#498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
          /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
(202) 514-7201
Attorneys for Defendant

```
By authorization
Larry J. Stein, DC Bar #397397
2009 North Fourteenth Street
Suite 708
Arlington, VA 22201

Attorney for Plaintiff
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY E. PROCTOR,              )
                              )
            Plaintiff,         )
                              )
        v.                     )    Civil Action No. 07-01723 PLF
                              )
MARY E. PETERS,               )
Secretary Of The Department   )
Transportation,               )
                              )
            Defendant.         )
                              )
_____)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDA A. OLIVO,               )
                              )
            Plaintiff,         )
                              )
        v.                     )    Civil Action No. 07-01725 PLF
                              )
MARY E. PETERS,               )
Secretary Of The Department   )
Transportation,               )
                              )
            Defendant.         )
                              )
_____)

<u>SCHEDULING ORDER</u>

UPON CONSIDERATION of the joint report submitted by the

parties under LCvR 16.3, it is this _____ day of _____,

2008, ORDERED:

    1.  The initial disclosures in this case are waived.

    2.  Discovery in this case will be completed by June 25,

2008.

    3.  Summary judgment motions, if any, will be filed no later

than July 25, 2008.

    4.  The pretrial conference will be held forty-five days after the close of discovery or after the resolution of the summary judgment motions, whichever is later.

                                     UNITED STATES DISTRICT JUDGE