IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA A. OLIVO,<br>419 N. Exeter Avenue<br>Margate City, NJ 08402<br><br>Plaintiff.<br><br>      v.<br><br>MARY E. PETERS,<br>Secretary of Transportation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil No. 07-01723 PLF<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

1. This is an action to redress Defendant's discrimination against Plaintiff because of her disability under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. ("Act"). Defendant, a qualified disabled individual for purposes of the Act, is a participant in the Voluntary Leave Transfer Program ("VLTP") administered by her employer, the Federal Aviation Administration ("FAA"), U.S. Department of Transportation ("Agency"), Washington, D.C. Plaintiff is employed by the Agency in Pomona, New Jersey.

JURISDICTION

2. This is a civil action for declaratory relief under 28 U.S.C. § 2201, for injunctive relief, and for other appropriate relief under 28 U.S.C. § 2202. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, and 42 U.S.C. §§ 2000e-5(f)(1) and 12117.

3. All conditions precedent to the filing of this action have been met by Plaintiff in that she has filed a timely EEO complaint with the Agency, and has filed this action within 90 days of receiving the Agency's dismissal of that EEO complaint.

VENUE

4. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e) (1). Defendant is an agency of the United States with its principal headquarters in the District of Columbia.

PARTIES

5. Plaintiff, Linda A. Olivo resides in Margate City, New Jersey. She has been employed by the FAA at the William J. Hughes Technical Center, Atlantic City International Airport, Pomona, New Jersey, since 1992.

FACTS

6. Plaintiff first entered the Agency's VLTP in 1999. Plaintiff suffers from stage 4 metastatic breast cancer. This condition significantly affects the following major life activities: walking, sleeping, concentrating, sitting, and standing. The program was designed to assist employees with an immediate medical and financial emergency by allowing the individual to accept donated leave from other employees when their own leave was exhausted to pay their salary until the medical crisis was over and the individual returned to the workplace.

7. In October, 2005, the Agency transferred its payroll program administration to that of the Department of the Interior. This switch resulted, in large measure, in the harm to Plaintiff which is the subject of this Complaint.

8. Prior to October, 2005, Agency employees were permitted to accept donated sick or annual leave from fellow government employees; this donated leave was placed in the participants' regular leave accounts. When the participant needed to take leave for medical reasons, the employee used his or her own accrued sick leave, and then relied on donated leave. While the participant was out on donated sick leave, he or she was able to

accrue his or her own annual and sick leave. The participant was able, as other employees, to use accrued annual leave for personal use. When donated leave was used, it was treated as leave *with* pay. This interpretation treated VLTP employees equally with other non disabled employees with VLTP participants only using donated leave for their medical condition when absolutely necessary if their regular accrued sick leave was insufficient for the medical need.

9. The various payroll systems used by the Agency until October, 2005 did not separate donated leave from accrued annual or sick leave. When donated leave was received, it was placed in the employee's accrued annual or sick leave account. Employees submitted leave slips for annual or sick leave, and were allowed to charge vacation time to their accrued leave. There was no limit on the hours that a leave recipient may accrue while working, but the hours had to have been used before additional leave is used.

10. In the fourth quarter of 2005, the Agency switched to a new payroll system, which separated employees' leave into:

    a. Accrued Annual
    b. Accrued Sick
    c. LvSh-SPCANM (Set Aside/Annual, limit 40 hrs)
    d. LvSh-SPCSKM (Set Aside/Sick, limit 40 hrs)
    e. Lvsh-Medical (donated leave)
    f. Lvsh – Family (family leave under the Family Leave Act)

11. Without notice to the Plaintiff, or her union, the agency took from Plaintiff accrued leave of 40 hours sick and 40 hours annual leave. This leave was placed in a separate set aside account that could not be used until the participant left the program. The remainder of Plaintiff's accrued annual and/or sick leave was wiped out and moved into a donated category (with no accounting provided to participants as to what was accrued vs. donated leave).

12. Participants were informed by human resources that all leave (accrued or donated) could only be used for medical purposes. Any personal leave not related to medical purposes would now have to be taken as leave without pay ("LWOP"). Plaintiff on numerous occasions was placed on LWOP. After the initial removal of accrued sick and annual to the donated leave category, all future accrued annual and sick leave was placed in Plaintiff's accrued leave category but this leave was used first before donated leave was used. Although Plaintiff's accrued leave was placed in her accrued leave category, the Agency has informed her that she is not permitted to use that leave for anything other than medical reasons, although Plaintiff has, on occasion, been permitted the use of advanced annual leave

13. As of October, 2005, Plaintiff's accrued leave began to be prorated based on the amount of donated leave she used. Use of donated leave began to be treated like "time not worked," which is contrary to VLTP policy and past practices. After the switchover to the new Department of Interior payroll system, in October 2005, Plaintiff was told, contrary to past practice, that she was no longer permitted to use her accrued annual leave for anything other than medically-related leave.

14. Under 5 U.S.C. § 6337(b) (1), an employee who is in a "transferred leave status" may accrue annual and sick leave up to the maximum of five annual and five sick days, "at the same rate as if such employee were then in a paid leave status." The Agency's decision, post-October, 2005, to pro-rate the amount of leave accrued by Plaintiff while she participates in the VLTP program, and uses donated leave, is inconsistent with section 6337(b) (1), and discriminatory. It also is inconsistent with the Agency's Human Resources Operating Instructions, § 2A, which state that there is "no limit on the hours

- 4 -

that a leave recipient may accrue while working, but the hours are used before additional donated leave is used."

15. Under 5 U.S.C. § 6333(b), a recipient of leave through the VLTP program may use annual leave "in the same manner and for the same purposes" as if such leave recipient had accrued that leave routinely under the Federal Government's standard leave program, except that any annual leave accumulated and available must be exhausted before any transferred annual leave may be used. The Agency's determination not to permit Plaintiff to use her accrued annual leave for anything other than medically-related leave is inconsistent with section 6337(b) (1), and discriminatory.

CLAIMS

16. All of the allegations contained in paragraphs 1-15 are incorporated herein as if set forth verbatim.

17. Defendant's actions in seizing control of Plaintiff's accrued annual and sick leave balance, in October, 2005, constitutes discrimination based on disability, in violation of the Act.

18. Defendant's refusal to permit Plaintiff to use any of her accrued annual leave for non medically-related activities, in the same manner as those employees not participating in the VLTP program, constitutes discrimination based on disability, in violation of the Act.

19. These Agency's actions, in addition, constitute prohibited Agency action under the Administrative Procedures Act, 5 U.S.C. § 702.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Accept jurisdiction of this case.

2. Grant Plaintiff a trial by jury on all issues so triable.

3. Declare that Plaintiff has suffered acts of discrimination at the hands of defendant based on her disability.

4. Grant Plaintiff preliminary and permanent injunctive relief.

5. Restore all prorated annual and sick leave taken to Plaintiff's sick and annual leave balances.

6. Reimbursement of all LWOP charged for any annual leave request submitted after October, 2005.

7. Compensatory and punitive damages for arbitrary and capricious administration of the VLTP program since October, 2005.

                                           Respectfully submitted,

                                           _____
                                           Larry J. Stein, Bar No. 397397
                                           2009 N. 14th Street, Suite 708
                                           Arlington, VA 22201
                                           703/812-7880
                                           703/522-1250 Fax
                                           Attorney for Plaintiff